**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**EL PASO DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA**, | § | |
| | § | |
| *Plaintiff,* | § | |
| v. | § | **EP-22-CR-01727-FM** |
| | § | |
| **RUSSELL RICE,** | § | |
| | § | |
| *Defendant.* | § | |

## REPORT AND RECOMMENDATION

Presently before the Court is Defendant Russell Rice's "Motion to Dismiss" Indictment (ECF No. 49) filed pursuant to Federal Rule of Criminal Procedure 12(b)(3)(B). The Indictment charges Rice with one count of possession of a firearm by a felon in violation of 18 U.S.C. § 922(g)(l), and Rice argues that under the new framework announced in *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111 (2022), § 922(g)(l) violates the Second Amendment both facially and as applied to him. The Honorable Senior District Judge Frank Montalvo (the "referring court") referred the motion to the undersigned Magistrate Judge for a report and recommendation pursuant to 28 U.S.C. § 636(b). For the reasons set forth below, the Court RECOMMENDS that the motion be DENIED.

### I.   BACKGROUND

#### A.  Factual Background[1]

On June 5, 2022, local law enforcement was dispatched to an El Paso gentlemen's club after receiving a call about a gun fight in the front parking area of the club. Law enforcement

---

[1] The facts recited in this section are taken from the Government's response brief. Gov't Resp. to Def.'s Mot. to Dismiss Indictment at 1–3 [hereinafter, Gov't Resp.], ECF No. 54. In his reply brief, Rice does not address, much less contest, any of the facts stated in the Government's brief. For purposes of this motion, therefore, the Court accepts these facts as undisputed.

officers responded to the scene and obtained surveillance video from both outside and inside the establishment.  The video showed Rice walking outside of the club, crouching down, and then jumping up while discharging what appeared to be a firearm.  Muzzle flashes from the firearm discharged by Rice were visible in the video.

Following the shooting, additional surveillance video footage from the club captured Rice running into the premises, entering an office area not covered by video surveillance, and subsequently leaving the establishment.  This video recorded a club employee entering the off-camera office and emerging with a firearm shortly after Rice had left the same space.  The employee turned that firearm over to law enforcement once law enforcement arrived at the scene.

The firearm was a functioning Smith & Wesson, Bodyguard 380, .380 caliber semi-automatic pistol.  Outside of the establishment, law enforcement officers recovered two .380 ACP caliber Tulammo casings from the area where video surveillance captured Rice standing.  Both these casings, as well as the recovered pistol, were test fired with the results processed through the National Integrated Ballistic Information Network.  The result of these tests was a presumptive match between both the shell casings and the pistol.

During a subsequent interview by law enforcement regarding the June 5, 2022 shoot-out at the club, Rice admitted to both possessing a firearm at that establishment as well as discharging it.  Record checks by law enforcement officers revealed that prior to June 5, 2022, Rice had been convicted of several felony offenses, including a Texas conviction for Manufacturing or Delivery of a Controlled Substance in Penalty Group 1, 1-to-4 grams.  That state conviction resulted in a sentence of two years confinement.

**B. Procedural Background**

On October 19, 2022, a federal Grand Jury sitting in El Paso, Texas, returned a true bill on a one-count Indictment (ECF No. 3) against Rice alleging a violation of § 922(g)(1)—felon in possession of a firearm—and § 924(a)(2), as Rice was alleged to have knowingly possessed a firearm that had been shipped and transported in interstate and foreign commerce after being convicted of a crime punishable by imprisonment of more than one year.

On August 21, 2023, Rice filed the instant motion to dismiss indictment. Def.'s Mot. to Dismiss, ECF No. 49. On September 7, the Government filed a response, Gov't Resp., ECF No. 54, and Rice followed by filing a reply on September 19, Def.'s Reply to Gov't Resp. to Def.'s Mot. to Dismiss [hereinafter, Def.'s Reply], ECF No. 57. On October 5, 2023, the referring court referred the motion to the undersigned Magistrate Judge.

## II. STANDARD

Federal Rule of Criminal Procedure 12 allows a party to "raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits." Fed. R. Crim. P. 12(b)(1). Specifically, the rule allows a defendant to file a pretrial motion to dismiss an indictment on the ground that there is "a defect in the indictment," such as the "failure to state an offense." *Id*. 12(b)(3)(B)(v); *United States v. Vasquez*, 899 F.3d 363, 371 (5th Cir. 2018). A court may rule on a pretrial motion to dismiss an indictment where, as here, the motion presents a question of law involving undisputed facts. *United States v. Flores*, 404 F.3d 320, 325 (5th Cir. 2005); *see also* note 1, *supra*.

## III. DISCUSSION

Rice moves to dismiss his indictment based on two sets of constitutional challenges. First, he argues, § 922(g)(1) violates the Second Amendment, facially and as applied to him,

- 3 -

under *Bruen*.  Second, he asserts, § 922(g)(1) violates the Commerce Clause, facially and as applied to his conduct.  Below, the Court addresses each set of challenges in turn.

## A.  Second Amendment Challenges

The Second Amendment protects the right of individuals to "keep and bear" firearms for their self-defense.  U.S. Const. amend. II; *see also District of Columbia v. Heller*, 554 U.S. 570, 592, 628, 635–36 (2008) (holding the Second Amendment codified a "pre-existing" "individual right to possess and carry weapons" for self-defense).  Section 922(g)(1), under which Rice was indicted, makes it unlawful for any person "who has been convicted in any court of[] a crime punishable by imprisonment for a term exceeding one year" to "possess . . . any firearm or ammunition . . . which has been shipped or transported in interstate or foreign commerce."  18 U.S.C. § 922(g)(1); *see also id.* § 3156(a)(3) (defining "felony" as "an offense punishable by a maximum term of imprisonment of more than one year").

Rice points out that there is no binding precedent from the Fifth Circuit that § 922(g)( l) is constitutional under the new *Bruen* framework and posits that the Fifth Circuit "rejected reliance on pre-*Bruen* circuit caselaw" governing § 922(g)(1) because, he explains, *Bruen* "'fundamentally changed'" Second Amendment jurisprudence.  Def.'s Mot. to Dismiss at 19 n.11 (quoting *United States v. Rahimi*, 61 F.4th 443, 450–51 (5th Cir. 2023)); *see also id.* at 1 ("*Bruen* 'fundamentally changed' Second Amendment analysis and rendered prior precedent obsolete." (same)).  Under *Bruen* and *Rahimi*, he says, courts must apply the textual and historical framework to all Second Amendment challenges and "cannot obviate that requirement by relying on pre-*Bruen* caselaw."  *Id.* at 5.  He argues that under the new *Bruen* framework, § 922(g)(1) is unconstitutional because the Government cannot meet its burden to show § 922(g)(l) is consistent with the Nation's historical tradition of firearm regulation.  *Id*. at 1, 3.

Long before *Bruen*, the Fifth Circuit held that § 922(g)(1) "does not violate the Second Amendment." *United States v. Darrington*, 351 F.3d 632, 634 (5th Cir. 2003).  Post-*Bruen*, the Fifth Circuit has yet to decide § 922(g)(1)'s constitutional fate, whether on its face or as applied—though it has decided the fate of two other provisions of § 922(g).  *See Rahimi*, 61 F.4th at 448, 460–61 (holding § 922(g)(8) is unconstitutional on its face); *United States v. Daniels*, 77 F.4th at 343, 355 (5th Cir. 2023) (holding § 922(g)(3) is unconstitutional as applied to the defendant there).  "[N]o circuit has granted a facial challenge" to § 922(g)(1) under *Bruen*, "though they have split on as-applied challenges." *United States v. Fulwiler*, No. 23-30152, 2023 WL 7118748, at *1 (5th Cir. Oct. 27, 2023) (unpublished) (per curiam) (collecting cases). In this Circuit, it is not clear whether § 922(g)(1) would not pass constitutional muster under *Bruen*. *See*, *e.g.*, *United States v. Racliff*, No. 22-10409, 2023 WL 5972049, at *1 (5th Cir. Sept. 14, 2023) (unpublished) (per curiam) ("[I]t is not clear that *Bruen* dictates" that "§ 922(g)(1) is unconstitutional."); *United States v. Washington*, No. 22-10574, 2023 WL 5275013, at *1 (5th Cir. Aug. 16, 2023) (unpublished) (per curiam) ("[W]e have yet to address the constitutionality of § 922(g)(1)—and, in fact, *Rahimi* suggests that *Bruen*'s logic may not extend to this provision.").

As explained fully below, the Court is of the opinion that *Bruen* has not implicitly overruled *Darrington* and therefore, this Court is bound to follow it—until and unless the Fifth Circuit says otherwise. *See In re Bonvillian Marine Serv., Inc.*, 19 F.4th 787, 789–90 (5th Cir. 2021) (overturning a Fifth Circuit precedent because a subsequent Supreme Court decision had "effected an intervening change in the law that warrants a change in course"—while remarking that the district court below "was not free to overturn" the precedent and that the lower court

"correctly found itself bound by" the precedent).  Moreover, nothing in *Rahimi* disturbs the precedential effect of *Darrington*.  But, first, the Court addresses a preliminary matter.

### 1. Preliminary Matter

The Court observes that in their response and reply briefs, the parties rely on the referring court's prior decisions in *United States v. Melendez-Machado*, No. 3:22-CR-00634-FM (W.D. Tex.).  In that case, in October 2022, the court initially denied the defendant Melendez's motion to dismiss indictment, concluding, after conducting a historical analysis under the *Bruen* framework, that § 922(g)(1) is constitutional facially and as applied to Melendez (he had three prior Texas state felony convictions for theft of property worth less than $2,500).  *United States v. Melendez-Machado*, 635 F. Supp. 3d 545, 551–53 [hereinafter, *Melendez I*] (W.D. Tex. 2022) (Montalvo, J.).

Subsequently, the Fifth Circuit decided *Rahimi*, where the panel concluded that § 922(g)(8) is facially unconstitutional under *Bruen*.  *Rahimi*, 61 F.4th at 448, 460–61.  Thereafter, in June 2023, the referring court reconsidered *Melendez I* in light of *Rahimi* at the urging of Melendez, and it nevertheless reached the same conclusion as before.  *United States v. Melendez-Machado*, --- F. Supp. 3d ----, 2023 WL 4003508, at *1–*2, *10 [hereinafter, *Melendez II*] (W.D. Tex. June 14, 2023) (Montalvo, J.).  In *Melendez II*, the referring court modified—based on its reading of *Rahimi*—certain predicate conclusions it reached in *Melendez I*.  *Compare, e.g.*, *Melendez I*, 635 F. Supp. 3d at 548-49 (concluding that felons are not part of "the people" whom the Second Amendment protects), *with Melendez II*, 2023 WL 4003508, at *3–*4 (concluding that "all Americans, regardless of their criminal background, are included in 'the people,'" noting that "the *Rahimi* Court did not provide clear guidance on this point").

Here, in response to Rice's motion, the Government relies on, and incorporates in its brief, the law and reasoning contained in *Melendrez I*, and on that basis, it asks the Court to reject Rice's Second Amendment challenges to § 922(g)(1).  Gov't's Resp. at 3–4.  In his reply brief, Rice faults the Government for ignoring that in *Melendrez II*, the referring court already modified parts of its reasoning in *Melendrez I*.  Def.'s Reply at 2.  He posits that *Melendrez II* is largely consistent with his arguments but takes issue with certain predicate conclusions and the ultimate conclusion reached in *Melendrez II*.  *Id.* at 3.  Specifically, Rice contends that based on recent guidance from the Fifth Circuit in *Daniels* (which was decided after *Melendrez II*) and its application to *Melendrez II*, the Court should find that § 922(g)(1) is unconstitutional on its face and as applied to him.  *Id.* at 2.  Thus, whereas the Government relies on *Melendrez I*, Rice relies on *Melendrez II*, albeit with further modifications that are favorable to him.

To be sure, in ruling on the instant motion, the referring court is not bound either by *Melendrez I* or by *Melendrez II*.  *See Flores v. FS Blinds, L.L.C.*, 73 F.4th 356, 364 n.4 (5th Cir. 2023) ("'[A] decision of a federal district court is not binding precedent in either a different judicial district, the same judicial district, or even upon the same judge in a different case.'" (ellipses omitted) (quoting *Camreta v. Greene*, 563 U.S. 692, 709 n.7 (2011)).  The referring court's decision in *Melendrez II* is currently pending on appeal at the Fifth Circuit.  *See United States v. Melendrez-Machado*, No. 23-50506 (5th Cir.).  Moreover, the Supreme Court granted *certiorari* in *Rahimi*, and just the other day, it heard oral argument in that matter.[2]

Here, the Court declines to address the parties' arguments turning on either *Melendrez I* or *Melendrez II*, or to engage in yet another iteration of a *Bruen* analysis of whether § 922(g)(1)

---

[2] Tr. of Oral Arg., *United States v. Rahimi*, No. 22-915 (U.S. Nov. 7, 2023), *at* https://www.supremecourt.gov/oral_arguments/argument_transcripts/2023/22-915_986b.pdf (last visited Nov. 16, 2023).

is constitutional because, as discussed below, it concludes that it is bound by the Circuit's pre-*Bruen* precedent upholding § 922(g)(1)'s constitutionality—which remains undisturbed and valid until and unless the Fifth Circuit says otherwise.

### 2. *Bruen* Has Not Implicitly Overruled the Fifth Circuit's Pre-*Bruen* § 922(g)(1) Precedent

Though, by now, it may be trite to say, *Bruen* rejected an old test (partially) and announced a new test for analyzing Second Amendment challenges to a firearms law. After *Heller* but before *Bruen*, the Fifth Circuit adopted a two-step test analyzing whether a law "comport[s] with the Second Amendment." *NRA v. Bureau of Alcohol, Tobacco, Firearms, & Explosives*, 700 F.3d 185, 194 (5th Cir. 2012), *abrogated by Bruen*, 142 S. Ct. 2111. It was not the first circuit to develop the test; instead, its test was "a version" of the then "prevailing approach" used by its sister circuits. *Id.* At the first step of that test, courts determined whether the law regulates conduct that "falls within the scope of the Second Amendment right." *Id.*; *see also id.* at 197 (At step one, "the threshold issue is whether the party is entitled to the Second Amendment's protection."). To make that determination, courts looked to "whether the law harmonizes with the historical traditions associated with the Second Amendment guarantee." *Id.* at 194. If the burdened conduct "falls outside the Second Amendment's scope, then the law passes constitutional muster," but if it "falls within the Second Amendment's scope," the courts proceeded to step two of the test where they applied "the appropriate level of means-ends scrutiny," either strict or intermediate, *id.* at 195—a "balancing" inquiry, *United States v. McGinnis*, 956 F.3d 747, 753 n.3 (5th Cir. 2020).

The Supreme Court in *Bruen* said step one of that test was "broadly consistent with *Heller*, which demands a test rooted in the Second Amendment's text, as informed by history." *Bruen*, 142 S. Ct. at 2127. But the Court disavowed step two of the test as "one step too many"

because *Heller* "do[es] not support applying means-end scrutiny in the Second Amendment context." *Id.*  Indeed, in so doing, the Supreme Court expressly cited *NRA*.  *Id.* at 2127 n.4.  The Court then set out a new two-step test.  *Id.* at 2129–30.  Under it, courts must ask whether "the Second Amendment's plain text covers [the] conduct" at issue, *id.*, and if so, whether the law "is consistent with this Nation's historical tradition of firearm regulation," *id.* at 2126.  "Only if [the law] is consistent with this Nation's historical tradition may a court conclude that the . . . conduct falls outside the Second Amendment's unqualified command."  *Id.* (internal quotes omitted).

"But the emergence of a new test doesn't necessarily invalidate [a circuit's] earlier precedent."  *Vincent v. Garland*, 80 F.4th 1197, 1200 (10th Cir. 2023).  "[F]or a Supreme Court decision to change our Circuit's law, it . . . must unequivocally overrule prior precedent," *In re Bonvillian Marine Serv.,* 19 F.4th at 792 (internal quotes omitted), either "expressly or implicitly," *United States v. Tanksley*, 848 F.3d 347, 350 (5th Cir. 2017).  One situation in which an implicit overruling may occur is "where an intervening Supreme Court decision fundamentally changes the focus of the relevant analysis . . . followed in" the Circuit's previous decisions.  *Acosta v. Hensel Phelps Constr. Co.*, 909 F.3d 723, 742–43 (5th Cir. 2018) (cleaned up).  Similarly, an implicit overruling may occur where an intervening Supreme Court decision "disavows the mode of analysis on which [the] precedent *relied*."  *Stokes v. Sw. Airlines*, 887 F.3d 199, 204 (5th Cir. 2018) (emphasis added); *see also Hoskins v. Bekins Van Lines*, 343 F.3d 769, 775 (5th Cir. 2003) (holding a recent Supreme Court decision "overruled the analysis *used* in" a prior Fifth Circuit decision (emphasis added)).  So, the question is whether the Fifth Circuit's pre-*Bruen* Second Amendment precedents upholding § 922(g)(1)'s constitutionality *relied on* the means-end scrutiny that *Bruen* disavowed or a version thereof.  To answer that question, below, the Court traces the Fifth Circuit's pre-*Bruen* precedents governing § 922(g)(1).

The Court begins with *United States v. Emerson*, 270 F.3d 203 (5th Cir. 2001), because when it comes to the Fifth Circuit's pre-*Bruen* Second Amendment jurisprudence over the past two decades—all roads lead to *Emerson*. There, at issue was whether § 922(g)(8)—which prohibits possession of firearms while under a domestic violence restraining order—was unconstitutional under the Second Amendment facially and as applied to Emerson, the defendant there. *Emerson*, 270 F.3d at 210, 212, 265 n.66. The *Emerson* panel held that § 922(g)(8), as applied to Emerson, did not infringe his individual rights under the Amendment. *Id.* at 260, 264–65. Subsequently, another Fifth Circuit panel interpreted *Emerson*'s analysis of the as-applied challenge, *id.* at 261–64, as follows: *Emerson* "determined—presumably by applying some form of means-end scrutiny *sub silentio*—that § 922(g)(8) [was] 'narrowly tailored' to the goal of minimizing 'the threat of lawless violence,'" *McGinnis*, 956 F.3d at 755 (quoting *Emerson*, 270 F.3d at 261, 264); *see also Rahimi*, 61 F.4th at 450 (quoting the *McGinnis* panel's interpretation of *Emerson*'s as-applied analysis). So, no one would question that *Bruen* implicitly overruled *Emerson*'s holding that § 922(g)(8) was constitutional.

But there is more to *Emerson*. There, the panel dedicated "84 pages," *Emerson*, 270 F.3d at 272 (Parker, J. specially concurring); *see also id.* at 218–60, before it even began its analysis of the as-applied challenge to § 922(g)(8), *id.* at 261–65. Those pages supplied what later became the bedrock of the Fifth Circuit's Second Amendment jurisprudence, including, as relevant here, its later-developed precedents that upheld the constitutionality of § 922(g)(1). Therein, the panel conducted "an analysis of history and wording of the Second Amendment." *Id.* at 227. Following that analysis, the panel held that the Second Amendment "protects the right of individuals, including those not then actually a member of any militia or engaged in

active military service or training, to privately possess and bear their own firearms." *Id.* at 260.

Seven years later, that holding was vindicated in *Heller*.

Even more, immediately after so holding, and before addressing the defendant's specific arguments on his as-applied challenge to § 922(g)(8), the *Emerson* panel wrote:

> Although, as we have held, the Second Amendment does protect individual rights, that does not mean that those rights may never be made subject to any limited, *narrowly tailored specific exceptions or restrictions* for particular cases that are reasonable and not inconsistent with the right of Americans generally to individually keep and bear their private arms as historically understood in this country. Indeed, Emerson does not contend, and the district court did not hold, otherwise. As we have previously noted, *it is clear that felons*, infants and those of unsound mind *may be prohibited from possessing firearms*. See note 21, *supra*.

*Emerson*, 270 F.3d at 261 (emphasis added); *see also id.* at 226 n.21. The panel thus pronounced that felons may be prohibited from possessing firearms.

In making that pronouncement, the panel did not rely on, or engage in, any means-end analysis—of any form. Instead, the panel relied solely on historical evidence. To illustrate, Footnote 21 in *Emerson*, which the panel cited in support of that pronouncement (see the block quote above), is embedded within the 84-page section of the opinion discussing the panel's textual and historical analysis of the Second Amendment. *Emerson*, 270 F.3d at 226 n.21. In that footnote, the panel cited scholarship that said: "Colonial and English societies of the eighteenth century, as well as their modern counterparts, have excluded . . . felons from possessing firearms[]"; "[n]or does it seem that the Founders considered felons within the common law right to arms or intended to confer any such right upon them[]"; and "violent criminals . . . may be deprived of firearms." *Id.* (cleaned up) (citations omitted).

So, what to make of the panel making that pronouncement in the same breath as stating that the Second Amendment rights may be subject to "limited, narrowly tailored specific exceptions or restrictions . . . "? *Emerson*, 270 F.3d at 261. Perhaps, the panel meant to say that

given that "felons may be prohibited from possessing firearms" as demonstrated by historical practices, the Second Amendment rights can be subject to certain limited, narrowly tailored specific exceptions or restrictions—not that the prohibition on firearms possession by felons itself is a narrowly tailored exception or restriction.  On the other hand, perhaps, the panel viewed the prohibition as a "narrowly tailored" exception.  Subsequently, another panel of the Fifth Circuit seems to have taken that view: discussing *Emerson*, it opined, "§ 922(g)(1) *represents* a limited and narrowly tailored exception to the freedom to possess firearms, reasonable in its purposes and consistent with the right to bear arms protected under the Second Amendment."  *United States v. Everist*, 368 F.3d 517, 519 (5th Cir. 2004) (emphasis added).[3]  If so, perhaps, it was an attempt by the *Emerson* panel to characterize in the then-contemporary constitutional lexicon that which was already manifest in the nation's historical tradition—a post-hoc rationalization of some sort.[4]  While, in hindsight, judging from today's constitutional perspective, that characterization or view might have been an unforced error,[5] it is not a ground to say that *Emerson*'s pronouncement—that felons may be prohibited from possessing firearms—has been overruled by *Bruen* because, as discussed above, the pronouncement itself was not the product of any interest-balancing inquiry made by the panel.

---

[3] Judge Garwood, who authored the majority opinion in *Emerson*, was also a member of the *Everist* panel.

[4] *See* Mathew S. Nosanchuk, *The Embarrassing Interpretation of the Second Amendment*, 29 N. Ky. L. Rev. 705, 787–93 (2002).

[5] *But see Jacobs v. Nat'l Drug Intel. Ctr.*, 548 F.3d 375, 378 (5th Cir. 2008) ("[E]ven if a panel's interpretation of the law appears flawed, the rule of orderliness prevents a subsequent panel from declaring it void." (citing *Grabowski v. Jackson Cnty. Pub. Defs. Off.*, 47 F.3d 1386, 1400 n.4 (5th Cir. 1995) (Smith, J., concurring in part and dissenting in part), *vacated for reh'g en banc*, *id.* at 1403, *district court judgment aff'd*, 79 F.3d 478 (5th Cir. 1996) (en banc)).

A couple of years later, the Fifth Circuit enshrined the *Emerson* pronouncement as the law of this Circuit. *Darrington*, 351 F.3d 632. Reciting the block quote from *Emerson* reproduced above, the *Darrington* panel wrote that *Emerson* "explained that the individual right it recognized does not preclude the government from prohibiting the possession of firearms by felons." *Id*. at 633–34 (citing *Emerson*, 270 F.3d at 261). It observed that "*Emerson* also discusse[d] authority that legislative prohibitions on the ownership of firearms by felons are not considered infringements on the historically understood right to bear arms protected by the Second Amendment." *Id.* at 634 (citing *Emerson*, 270 F.3d at 226 n.21). It held, "Section 922(g)(1) does not violate the Second Amendment." *Id.* In so holding, *Darrington*, like *Emerson* in making the pronouncement, did not engage in any means-end analysis of any form.

Post-*Heller*, but before its adoption of *NRA*'s two-step test, the Fifth Circuit addressed in *Anderson* § 922(g)(1)'s constitutionality in view of *Heller*. *United States v. Anderson*, 559 F.3d 348, 352 (5th Cir. 2009). Observing that the *Heller* Court stated that "'nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons,'" the *Anderson* panel concluded that "*Heller* provides no basis for reconsidering *Darrington*." *Id.* at 352 & n.6 (cleaned up) (quoting *Heller*, 554 U.S. at 626). It then reaffirmed *Darrington* and the constitutionality of § 922(g)(1). *Id.* at 352; *see also McGinnis*, 956 F.3d at 755 (discussing *Anderson*). *Anderson*, like *Darrington*, did not engage in any means-end analysis of any form.

Then, after it adopted *NRA*'s two-step test, the Fifth Circuit in *Massey* declined an invitation to reexamine the constitutionality of § 922(g)(1) under that test. *United States v. Massey*, 849 F.3d 262, 265 (5th Cir. 2017). Repeating the *Heller* Court's statement that nothing in its opinion should be taken to cast doubt on longstanding prohibitions on the possession of

firearms by felons, the *Massey* panel opined that the Supreme Court "specifically preserved the constitutionality of felon-in-possession" statutes. *Id.* (citing *Heller*, 554 U.S. at 626). Pointing out that in *Anderson*, the court reaffirmed the constitutionality of § 922(g)(1), the *Massey* panel declined to revisit *Anderson*'s holding on the rule-of-orderliness ground. *Id.*

Those are the key (insofar as the rule of orderliness is concerned) Fifth Circuit decisions regarding the constitutionality of § 922(g)(1) under the Second Amendment. To recap, in holding that § 922(g)(1) is constitutional, *Darrington*—like *Emerson* in pronouncing that felons may be prohibited from possessing firearms—did not rely on, or engage in, an analysis of any means-end scrutiny test or any interest-balancing inquiry of any form. Nor did *Anderson* in reaffirming *Darrington*'s holding post-*Heller*. As such, *Bruen*'s repudiation of the means-end scrutiny did not unequivocally, *sub silentio* overrule *Darrington*. *Cf.*, *e.g.*, *Stokes*, *supra*, 887 F.3d at 204 (an implicit overruling may occur where an intervening Supreme Court decision "disavows the mode of analysis on which [the] precedent *relied*." (emphasis added)).

Moreover, *Darrington* and its holding that § 922(g)(1) is constitutional have "not fallen unequivocally out of step" with the new test announced in *Bruen*. *In re Bonvillian Marine Serv.*, 19 F.4th at 792. Indeed, *Bruen* itself made that unequivocally clear. *See Tech. Automation Servs. Corp. v. Liberty Surplus Ins.*, 673 F.3d 399, 407 (5th Cir. 2012) (unwilling to say that a Supreme Court decision overruled *sub silentio* a Fifth Circuit precedent "especially when the Supreme Court repeatedly emphasized that [its decision] had very limited application"). And *Bruen* did so in two ways.

First, recall, in *Heller*, the Supreme Court assured that "nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons . . ." and that regulatory measures prohibiting such possessions are "presumptively lawful"—the so-called

"*Heller*'s assurance." *Heller*, 554 U.S. at 626–27, 627 n.26.  In *Bruen*, six of the nine Justices

pointed out that *Bruen* was not casting any doubt on *Heller*'s assurance.  *Bruen*, 142 S. Ct. at

2157 (Alito, J., concurring) ("Our holding decides nothing about who may lawfully possess a

firearm[.] . . . Nor have we disturbed anything that we said in *Heller*[.]"); *id*. at 2162

(Kavanaugh, J, concurring, joined by Roberts, C.J.) (approvingly repeating *Heller*'s assurance

(quoting *Heller*, 554 U.S. at 626–27, 627 n.26)); *id*. at 2189 (Breyer, J., dissenting, joined by

Sotomayor and Kagan, JJ.) ("Like Justice KAVANAUGH, I understand the Court's opinion

today to cast no doubt on that aspect of *Heller*'s holding." (quoting *Heller*, 554 U.S. at 626–27,

627 n.26)).

Second, the *Bruen* majority added that "nothing in [its] analysis should be interpreted to

suggest the unconstitutionality of the . . . 'shall-issue' licensing regimes," which "often require

applicants to undergo a background check."  *Id.* at 2138 n.9; *see also Rahimi*, 61 F.4th at 451 n.5

(acknowledging that the *Bruen* Court "blessed the general concept of shall-issue regimes").

*Bruen*'s language preserving the "shall-issue" regimes "could support an inference that the

Second Amendment doesn't entitle felons to possess firearms."  *Vincent*, 80 F.4th at 1202; *see*

*also Range v. Att'y Gen. United States of Am.*, 53 F.4th 262, 271–73 (3d Cir. 2022) (concluding

that *Bruen*'s statement on "shall-issue" regimes, together with two other statements, suggests that

criminals, as a group, "fall[] outside 'the people'"), *vacated for reh'g en banc by* 56 F.4th 992

(3d Cir. 2023), *district court judgment rev'd*, 69 F.4th 96, 106 (3d Cir. 2023) (en banc).

In sum, *Bruen* did not unequivocally, *sub silentio* overrule *Darrington*, which remains

binding precedent in the Fifth Circuit.  *Cf. Vincent*, 80 F.4th at 1200 & n.3, 1202 (a Tenth Circuit

panel decision) (concluding that *Bruen* did not indisputably and pellucidly abrogate the Tenth

Circuit's precedential opinion in *United States v. McCane*, 573 F.3d 1037 (10th Cir. 2009),

- 15 -

which upheld the constitutionality of § 922(g)(1), and reasoning, in part, that the *Bruen* "test didn't exist when we decided *McCane*" and "[u]nlike [some] circuits, we hadn't relied in *McCane* on the means or ends of the ban on felons' possession of firearms" (listing *Rahimi* to point out the Fifth Circuit as one such other circuit)).[6]

### 3.   *Rahimi* Left Undisturbed the Fifth Circuit's Pre-*Bruen* § 922(g)(1) Precedent

That brings us to what *Rahimi* might have said or implied about the post-*Bruen* state of the Fifth Circuit's pre-*Bruen* Second Amendment jurisprudence—particularly, its § 922(g)(1) precedent.  *See* Def.'s Mot. to Dismiss at 19 n.11 (quoting *Rahimi*, 61 F.4th at 450–51; *see also id.* at 1 (same).  There has been some confusion as to whether *Rahimi* "repudiate[d] . . . some (or perhaps *all*) pre-*Bruen* Fifth Circuit Second Amendment jurisprudence." *United States v. Cartledge*, No. 5-21-CR-520-OLG, 2023 WL 6368327, at \*2 (W.D. Tex. Sept. 7) (emphasis added), *R & R adopted*, 2023 WL 7190729 (W.D. Tex. Oct. 30, 2023).  Indeed, some lower courts in this Circuit have read *Rahimi* to say that *Bruen* rendered obsolete the Fifth Circuit's precedents involving other provisions of § 922(g), including § 922(g)(1)—not simply § 922(g)(8), which was at issue in *Rahimi*.[7]  So, the Court turns to *Rahimi*.

---

[6] In *McCane*, the Tenth Circuit's precedent, the court was presented with a constitutional challenge to § 922(g)(1) in light of *Heller*.  *McCane*, 573 F.3d at 1040.  In rejecting the challenge, the Tenth Circuit wrote only that "[t]he Supreme Court . . . explicitly stated in *Heller* that 'nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons.'"  *Id.* at 1047 (quoting *Heller*, 554 U.S. at 626–27, and further citing *Anderson*, 559 F.3d at 352 & n.6 (rejecting the argument that § 922(g)(1) is unconstitutional in light of *Heller*)).

[7] *See, e.g.*, *United States v. Flores*, No. SA-18-CR-00064-OLG, 2023 WL 5282384, \*3 (W.D. Tex. Aug. 16) ("[T]he Fifth Circuit in *Rahimi* indisputably stated . . . that *all* pre-*Bruen* precedent on the Second Amendment is obsolete[.]" (emphasis added)), *R & R adopted*, 2023 WL 7190729 (W.D. Tex. Oct. 30, 2023); *Melendrez II*, 2023 WL 4003508, at \*9 (stating the *Rahimi* Court concluded that *Bruen* so fundamentally changed the Fifth Circuit's Second Amendment jurisprudence that "*all* its prior precedence" is now obsolete (emphasis added)); *United States v. Connelly*, --- F. Supp. 3d. ----, No. EP-22-CR-229(2)-KC, 2023 WL 2806324, at \*3 (W.D. Tex. Apr. 6, 2023) (reading *Rahimi* as "recogniz[ing] the abrogation of" *United States v. Patterson*, 431 F.3d 832 (5th Cir. 2005), and *United States v. May*, 538 F. App'x 465 (5th Cir. 2013), each of which upheld the constitutionality of § 922(g)(3), even "though [*Rahimi*] did not mention *May or Patterson* specifically"); *United States v. Hernandez*, No. 3:23-CR-

---

In *Rahimi*, the panel began its rule-of-orderliness discussion by noting that in *Emerson*, the court concluded that § 922(g)(8) was constitutional as applied to the defendant there and that it did so "presumably by applying some form of means-end scrutiny *sub silentio*." *Rahimi*, 61 F.4th at 450 (citing *McGinnis*, 956 F.3d at 755). It also noted that in *McGinnis*, the court upheld[8] § 922(g)(8) using *NRA*'s two-step test. *Id.* The panel then pointed out that in *Bruen*, the Supreme Court "expressly repudiated the circuit courts' means-end scrutiny—the second step *embodied* in *Emerson* and *applied* in *McGinnis*." *Id.* (emphasis added). It concluded: "To the extent that the [Supreme] Court did not overtly overrule *Emerson* and *McGinnis*—it did not cite those cases but discussed other circuits' similar precedent—*Bruen* clearly fundamentally changed our analysis of laws that implicate the Second Amendment, *rendering our prior precedent obsolete*." *Id.* at 450–51 (emphasis added) (cleaned up).

That conclusion has led to some confusion. For one, *Rahimi*'s reference to *Emerson*, without qualification, could suggest that the panel meant to say *Emerson* in its entirety has been rendered obsolete, but, as we have seen above, *Emerson* was not only about § 922(g)(8); it said much, much more. For another, *Rahimi*'s chosen language "our prior precedent" in that conclusion, *id.* at 451, and its statement elsewhere that "*Bruen* requires us to re-evaluate *our*

---

0056-B, 2023 WL 4161203, at *2 (N.D. Tex. June 23, 2023) (*Rahimi* "left little room for precedent relating to 18 U.S.C. § 922(g)(1) to nonetheless survive.").

In particular, in *Melendrez II*, the referring court declined to follow *Anderson* even though *Anderson* did not "employ[] means-end scrutiny." *Melendrez II*, 2023 WL 4003508, at *9. Nonetheless, the court ultimately held, under *Bruen*, that § 922(g)(1) is constitutional on its face and as applied. *Id.* at *10. Thus, any error or impropriety in declining to follow *Anderson* was inconsequential—because *Melendrez II*'s holding did not conflict with *Anderson*'s holding. However, it would have been a different matter altogether, had the *Melendrez II* court held that § 922(g)(1) is unconstitutional on its face—contrary to *Anderson*. *See In re Bonvillian Marine Serv.*, *supra*, 19 F.4th at 789–90 (stating that the district court below "was not free to overturn" a Fifth Circuit precedent).

[8] For the sake of completeness, the Court adds here that the Fifth Circuit in *McGinnis* held § 922(g)(8) was constitutional on its face. *McGinnis*, 956 F.3d at 759. It also "reaffirm[ed] [the] holding from *Emerson* that § 922(g)(8) is not facially unconstitutional." *Id.* at 753.

*Second Amendment jurisprudence*," *id.* at 448 (emphasis added), without qualification, could suggest that the panel implied that *Bruen* rendered obsolete *all* of the Fifth Circuit's pre-*Bruen* Second Amendment precedents.  For the following reasons, the Court understands *Rahimi* to not make such broad announcements.

First, recall, *Emerson* had two aspects to it: one, its holding that § 922(g)(8) was constitutional and its analysis thereof, and the other, which includes its individual-rights interpretation of the Second Amendment, its pronouncement about prohibitions on firearms possession by felons, and its historical analysis thereof.  As discussed above, the latter aspect of *Emerson* supplied the bedrock of the Fifth Circuit's later-developed precedents on § 922(g)(1)'s constitutionality.  Indeed, the *Rahimi* panel distinguished between these two aspects of *Emerson* at the onset of its rule-of-orderliness discussion: "In *Emerson*, we held that the Second Amendment guarantees an individual right to keep and bear arms—the first circuit expressly to do so.  But we also concluded that § 922(g)(8) was constitutional as applied to the defendant there."  *Rahimi*, 61 F.4th at 450 (citations omitted).  And, at issue in *Rahimi* was § 922(g)(8)'s facial constitutionality, and the panel ultimately held it was unconstitutional; so, it needed to address whether *Emerson*'s holding on § 922(g)(8) survived *Bruen* for purposes of its rule-of-orderliness discussion.  It had no occasion to address the survivability of the other aspect of *Emerson*.  All this suggests that in concluding that *Bruen* rendered "*Emerson*" obsolete, *Rahimi* meant to refer to *Emerson*'s upholding of § 922(g)(8) only (and its analysis thereof), but not the other aspect of *Emerson*.

Second, as discussed in Part III(A)(2), *ante*, *Darrington*—like *Emerson* in making its pronouncement that felons may be prohibited from possessing firearms, on which *Darrington*

based its holding, and like *Anderson,* which reaffirmed *Darrington*—did not rely on, or engage

in, an analysis of any means-end scrutiny test to hold that § 922(g)(1) is constitutional.

Third, *Rahimi*'s express reliance on, and application of, *Heller*'s assurance in addressing

the import of *Bruen*'s repeated references to "law-abiding" citizens, *Rahimi*, 61 F.4th at 452

(citing *Heller*, 554 U.S. at 626–27); *id.* (citing *Heller*, 554 U.S. at 627 n.26), suggests that the

panel did not mean to say that *Bruen* rendered obsolete this Circuit's precedents upholding §

922(g)(1).  It explained that *Heller* and *Bruen* used the "law-abiding" phrase as "shorthand" to

"exclude from the [Supreme] Court's discussion" the mentally ill and felons, "groups that have

historically been stripped of their Second Amendment rights, i.e., groups whose disarmament the

Founders presumptively tolerated or would have tolerated."  *Id.* (cleaned up); *see also id.*

("*Bruen*'s reference to 'ordinary, law-abiding' citizens is no different"); *Daniels*, 77 F.4th at 343

(repeating *Rahimi*'s discussion).  As important, in concluding that Rahimi was among "the

people," *id.* at 453, the panel reasoned that "Rahimi did not fall into any such group" in that he

"was not a *convicted felon* or otherwise subject to another longstanding prohibition on the

possession of firearms that would have excluded him," *id.* at 452 (cleaned up) (emphasis added).

The upshot is that *Rahimi* could not have agreed with *Heller*'s assurance[9]—about which,

as mentioned above, six of the nine *Bruen* Justices said *Bruen* was not casting any doubt—and at

the same time, conclude that *Bruen* rendered obsolete the Fifth Circuit's precedents upholding §

922(g)(1), which bars felons from possessing firearms.  As the Court understands it, *Rahimi* did

---

[9] Indeed, in reciting *Heller*'s assurance, *Rahimi* cited, apparently with approval, the Third Circuit's panel decision in *Range* as "upholding 18 U.S.C. § 922(g)(1), which prohibits firearm possession by convicted felons, because 'the people' categorically 'excludes those who have demonstrated disregard for the rule of law through the commission of felony and felony-equivalent offenses.'"  *Rahimi*, 61 F.4th at 452 (quoting *Range*, *supra*, 53 F.4th at 266); *see also id.* (citing *Range* as "concluding that *Heller*, *McDonald v. City of Chicago, Ill.*, 561 U.S. 742 (2010), and *Bruen* support that criminals, as a group, 'fall outside 'the people' and that § 922(g)(1) is well-rooted in the nation's history and tradition of firearm regulation'" (cleaned up) (quoting *Range*, 53 F.4th at 273)).

not conclude the latter.  This understanding is bolstered by two unpublished post-*Rahimi*

decisions in which the Fifth Circuit rejected constitutional challenges to § 922(g)(1), albeit on a

plain-error posture.  *E.g.*, *Washington*, 2023 WL 5275013, at *1 ("[T]his court has previously

rejected Second Amendment challenges to § 922(g)(1) . . . .  However, we have yet to address

the constitutionality of § 922(g)(1)—and, in fact, *Rahimi* suggests that *Bruen*'s logic may not

extend to this provision." (citing *Darrington*)); *United States v. Garza*, No. 22-51021, 2023 WL

4044442, at *1 (5th Cir. June 15, 2023) (unpublished) (per curiam) ("[T]here is no binding

precedent explicitly holding that § 922(g)(1) is unconstitutional on its face or as applied[,] and . .

. it is not clear that either *Bruen* or *Rahimi* dictate such a result.").  Insofar as these decisions read

*Rahimi* to suggest that *Bruen*'s logic may not extend to § 922(g)(1) or that *Bruen* or *Rahimi* may

not dictate that § 922(g)(1) is unconstitutional, *Rahimi* itself could not have meant that *Bruen*

rendered *Darrington* obsolete or that it implicitly overruled *Darrington*.

The Court therefore understands *Rahimi* to conclude only that *Bruen* rendered obsolete

*Emerson*'s holding that § 922(g)(8) was constitutional and its analysis thereof, and *McGinnis*—

more generally, the Fifth Circuit's pre-*Bruen* precedents upholding § 922(g)(8).  *Rahimi* did not

imply that *Bruen* rendered obsolete the entirety of *Emerson* or this Circuit's pre-*Bruen* and post-

*Emerson* precedents upholding § 922(g)(1)'s constitutionality.

### 4.   The Court's Rulings on the Second Amendment Challenges to § 922(g)(1)

Rice brings a facial and an as-applied challenges to § 922(g)(1).  *See Freedom Path, Inc.*

*v. IRS.*, 913 F.3d 503, 508 (5th Cir. 2019) ("A facial challenge to a statute considers only the text

of the statute itself, not its application to the particular circumstances of an individual." (cleaned

up)).

Because, as discussed above, *Darrington* remains binding on this Court, it concludes that Rice's facial challenge should be rejected under *Darrington* and therefore, that his motion should be denied on this ground.  *See In re Bonvillian Marine Serv.*, *supra*, 19 F.4th at 789–90, *supra* (overturning a Fifth Circuit precedent because a subsequent Supreme Court decision had "effected an intervening change in the law that warrants a change in course"—while remarking that the district court below "was not free to overturn" the precedent and that the lower court "correctly found itself bound by" the precedent).

In so concluding, this Court is not alone among the lower courts of this Circuit.  *E.g.*, *United States v. Letterman*, No. 1:23-CR-66-HSO-BWR-1, 2023 WL 7336562, at *8 (S.D. Miss. Nov. 7, 2023) (denying motion to dismiss indictment relying on *Darrington*); *United States v. Delafose*, No. 2:23-CR-00185-01, 2023 WL 7368239, at *1 & n.2 (W.D. La. Nov. 7, 2023) (same); *United States v. Bazile,* No. CR 23-34, 2023 WL 7112833, at *2, *4 (E.D. La. Oct. 27, 2023) (same); *United States v. Betancourt*, No. CR H-21-229, 2023 WL 5917415, at *2 (S.D. Tex. Sept. 11, 2023) (same); *United States v. Thompson*, No. CR 22-173, --- F. Supp. 3d ----, 2023 WL 3159617, at *3, *5 (E.D. La. Apr. 27, 2023) (same); *United States v. Mendez*, No. 2:22-CR-00656, 2023 WL 3097243, at *2–*3 (S.D. Tex. Apr. 26, 2023) (denying motion to dismiss indictment relying on *Massey*; *United States v. Scroggins*, 599 F.3d 433 (5th Cir. 2010); and *Everist*); *United States v. Flores*, No. SA-18-CR-00064-OLG, 2023 WL 5282384, at *4–*5 (W.D. Tex. Aug. 16) (recommending dismissal of motion to dismiss indictment relying on *Darrington*, among other Fifth Circuit pre-*Bruen* decisions), *R & R adopted*, 2023 WL 7190729 (W.D. Tex. Oct. 30, 2023).

Turning to Rice's as-applied challenge to § 922(g)(1), he argues that his felony conviction predicating the charge against him is "less serious" or non-violent.  Def.'s Mot. to

Dismiss at 1, 26.[10]  Rice was previously convicted of Manufacturing or Delivery of a Controlled Substance in Penalty Group 1, 1-to-4 grams, in violation of Texas law, and that conviction resulted in a sentence of two years confinement.  Gov't's Resp. at 2; *see also* Def.'s Mot. to Dismiss at 3 ("Rice's felony convictions predicating the charge include several drug offenses[.]").

Pre-*Bruen*, the Fifth Circuit held that "[i]rrespective of whether his offense was violent in nature, a felon has shown manifest disregard for the rights of others.  He may not justly complain of the limitation on his liberty when his possession of firearms would otherwise threaten the security of his fellow citizens."  *Everist*, 368 F.3d at 519 (citing *Emerson*, 270 F.3d at 261).  Likewise, later, the Fifth Circuit said, "[p]rior to *Heller*, this circuit had already . . . determined that criminal prohibitions on felons (violent or nonviolent) possessing firearms did not violate that right."  *Scroggins*, 599 F.3d at 451 (citing *Emerson*, 270 F.3d at 261; *Darrington*, 351 F.3d at 633–64; and *Everist*, 368 F.3d at 519).  In light of these decisions, Rice's motion should be denied as to his as-applied challenge.

Rice also argues that *Daniels* has clarified that as-applied challenges require a showing that historical evidence supports disarming people like the defendant himself.  Def.'s Mot. to Dismiss at 26; Def.'s Reply at 8 (citing *Daniels*, 77 F.4th at 343).  To the extent that *Daniels* requires such a showing on an as-applied challenge to § 922(g)(1), the Court finds persuasive the Eighth Circuit's decision in *Jackson*, and on that basis, concludes, in the alternative, that Rice's motion should be denied as to his as-applied challenge.  *United States v. Jackson*, 69 F.4th 495 (8th Cir.), *reh'g en banc denied*, 85 F.4th 468 (8th Cir. 2023).  In *Jackson*, in deciding an as-applied challenge to § 922(g)(1) under *Bruen*, the Eighth Circuit concluded that "[g]iven

---

[10] *See also* Def.'s Reply at 8 (stating a growing number of courts have held that § 922(g)(1) violates the Second Amendment as applied "in cases of more serious criminal history").

[*Heller*'s and *Bruen*'s] assurances . . . , and the history that supports them, there is no need for felony-by-felony litigation regarding the constitutionality of § 922(g)(1)." *Id.* at 502. Upon reviewing historical evidence, the court held that § 922(g)(1) was constitutional as applied to the defendant there, *id.* at 506, who was indicted under § 922(g)(1) based on his prior Minnesota conviction for selling a controlled substance, *id.* at 498, 501.[11]

## B. Commerce Clause Challenges

Rice argues that § 922(g)(1) violates the Commerce Clause on its face and as applied to him. Def. Mot. to Dismiss at 27, 32. Specifically, he argues that *United States v. Lopez*, 514 U.S. 549 (1995), and *Jones v. United States*, 529 U.S. 848 (2000), cast substantial doubt on the Supreme Court's analysis in *Scarborough v. United States*, 431 U.S. 563 (1977), which held that "Congress intended no more than a minimal nexus requirement," and that "proof that the possessed firearm previously traveled in interstate commerce is sufficient to satisfy the statutorily required nexus between the possession of a firearm by a convicted felon and commerce," *Scarborough*, 431 U.S. at 564, 577. He contends that mere possession of a weapon has nothing to do with business or commerce and posits that criminalizing the possession of a firearm simply because that firearm at one time crossed state lines or entered commerce is an unconstitutional exercise of congressional power. Def.'s Mot. to Dismiss at 30. He acknowledges that his Commerce Clause challenges are foreclosed by *United States v. Rawls*, 85

---

[11] In *Jackson*, the panel observed that there are "two schools of thought" regarding historical regulations prohibiting firearms possession by certain groups of people. *Jackson*, 69 F.4th at 502. One, "legislatures have longstanding authority and discretion to disarm citizens who are not 'law-abiding'— i.e., those who are 'unwilling to obey the government and its laws, whether or not they had demonstrated a propensity for violence.'" *Id.* (quoting *Range*, 53 F.4th at 269). The other, "a legislature's traditional authority is narrower and limited to prohibiting possession of firearms by those who are deemed more dangerous than a typical law-abiding citizen." *Id.* Recognizing that "the better interpretation of the history may be debatable," the Eighth Circuit concluded that "either reading supports the constitutionality of § 922(g)(1) as applied to Jackson and other convicted felons, because the law is consistent with the Nation's historical tradition of firearm regulation." *Id.* (internal quotes omitted).

F.3d 240 (5th Cir. 1996), and *United States v. Alcantar*, 733 F.3d 143 (5th Cir. 2013), but asserts them to preserve the issue for appeal.  Def.'s Mot. to Dismiss at 32; Def.'s Reply at 1 n.1.

The Government points out, and Rice does not address or dispute in his reply brief, that the firearm that he possessed during the shoot-out at the El Paso gentlemen's club on June 5, 2022, was manufactured by Smith & Wesson, a firearms company with physical locations in Massachusetts and Tennessee, that Smith & Wesson does not manufacture firearms in the state of Texas, and that the ammunition at issue in this case was manufactured by the Tul Cartridge Works and the Ulyanovsk Cartridge Works, subsidiaries of Tulammo—a munitions producer located in the Russian Federation.  Def.'s Resp. at 5.  The Government thus appears to argue that the interstate commerce requirement is met because the gun and ammunition at issue traveled in interstate commerce.  *See id.*  That Congress has the authority under the Commerce Clause to regulate firearms possessions in the manner which § 922(g)(1) purports to do, the Government continues, is well settled.  *Id.* at 5–6 (citing, among other cases, *Scarborough*, 431 U.S. 563; and *Darrington*, 351 F.3d at 634)).

The Fifth Circuit has held that § 922(g)(1) is constitutional under the Commerce Clause. *United States v. Wallace*, 889 F.2d 580, 583 (5th Cir. 1989).  Following *Lopez*, the Fifth Circuit reconsidered *Lopez*'s effect on the constitutionality of § 922(g)(1) and held that "neither the holding in *Lopez* nor the reasons given therefor constitutionally invalidate § 922(g)(1)."  *Rawls*, 85 F.3d at 242; *see also Massey*, 849 F.3d at 266 (stating defendant's "notion that his conviction under Section 922(g)(1) violates the Commerce Clause in light of . . . *Lopez*, is . . . foreclosed." (internal citation omitted)).  And following *Jones*, the Fifth Circuit reconsidered the constitutionality of § 922(g)(1) again but concluded that nothing in *Jones* alters its prior holding that § 922(g)(1) is constitutional.  *United States v. Schmidt*, 487 F.3d 253, 255 (5th Cir. 2007)

(holding that the Supreme Court's decisions in *Lopez* and *Jones* "do not alter th[e] conclusion" that § 922(g)(1) is constitutional and rejecting facial and as-applied challenges to § 922(g)(1)); *United States v. Daugherty*, 264 F.3d 513, 518 (5th Cir. 2001) (stating the constitutionality of § 922(g)(1) "is not open to question" and *Jones* does not affect or undermine the constitutionality of § 922(g)(1)).  In view of this long line of the Fifth Circuit decisions upholding § 922(g)(1)'s constitutionality, Rice's motion should be denied as to his challenges under the Commerce Clause.

## IV.   CONCLUSION

For the foregoing reasons, **IT IS RECOMMENDED** that Defendant Russell Rice's Motion to Dismiss (ECF No. 49) be **DENIED**.

**So ORDERED and SIGNED this  17th  day of November 2023.**

**ANNE T. BERTON**
**UNITED STATES MAGISTRATE JUDGE**

## NOTICE

**FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS, AND RECOMMENDATIONS CONTAINED IN THE FOREGOING REPORT, WITHIN FOURTEEN DAYS OF SERVICE OF SAME, MAY BAR DE NOVO DETERMINATION BY THE DISTRICT JUDGE OF AN ISSUE COVERED HEREIN AND SHALL BAR APPELLATE REVIEW, EXCEPT UPON GROUNDS OF PLAIN ERROR, OF ANY UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS AS MAY BE ACCEPTED OR ADOPTED BY THE DISTRICT COURT.**